**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

————————

No. 01-40151

————————

DEROSHER E PRICE,

Plaintiff - Appellant,

versus

FEDERAL EXPRESS CORP,

Defendant - Appellee.

Appeal from the United States District Court
For the Southern District of Texas

March 12, 2002

Before BALDOCK,[*] SMITH, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Plaintiff-Appellant Derosher Price ("Price") appeals the district court's grant of summary

judgment in favor of Defendant-Appellee Federal Express Corporation ("FedEx"). Price filed suit

against FedEx alleging racial discrimination in violation of Title VII of the Civil Rights Act of 1964,

42 U.S.C. § 2000e et seq., after he applied for a promotion to "Zone Manager," and was rejected in

---

[*] Circuit Judge of the Tenth Circuit, sitting by designation.

favor of a white applicant. On appeal, we must decide whether the district court correctly determined that Price had failed to establish a genuine issue as to any material fact showing that he was the victim of intentional discrimination.

## I

Price, a black male, began his employment with FedEx in December 1984. In the intervening sixteen years, he has held a variety of positions, including Courier, Security Officer, Operations Manager, and most recently, Senior Security Specialist III. In June of 1997, two months after starting his position as a Security Specialist, Price applied for the position of Zone Manager of FedEx's Southern Region, located in Atlanta. Mark Hogan ("Hogan"), a senior manager, conducted the hiring process for the Zone Manager position. At the time the position was posted, Atlanta was one of the company's worst sites for theft and pilferage of customers' packages. According to Hogan, FedEx was looking for someone with significant experience, leadership ability, and ties to Atlanta to help correct this situation. Hogan posted the job position, seeking internal applicants from within the company, four times starting in December 1996. Each time, the posting included the following language:

> REQUIRES: BACHELOR'S DEGREE/EQUIVALENT. FIVE (5) YEARS PROFESSIONAL EXPERIENCE IN LAW ENFORCEMENT OR CORPORATE SECURITY. KNOWLEDGE OF FAA SECURITY REGULATIONS AND LAWS, INVESTIGATIONS, INTERROGATIONS AND DETECTION/ALARM SYSTEMS. REQUIRED TRAVEL 30-40%. MUST HOLD OR BE ABLE TO HOLD A SECRET SECURITY CLEARANCE. STRONG BASIC MANAGEMENT, HUMAN RELATIONS, COMMUNICATIONS SKILLS.

Four white candidates, all of whom had been with FedEx longer than the candidate who was eventually selected, were rejected after responding to the first three postings.

-2-

Price applied for the position after the fourth posting in June, 1997. To assist in the application process, Price's manager wrote an interoffice memorandum on his behalf, stating that he would waive any length of service requirement for Price, given his short tenure in his present position as a Security Specialist III. Hogan selected three candidates to interview, including Price. An interview panel, comprised of two senior managers in addition to Hogan, including one black manager, interviewed the three applicants.

Price unquestionably met the requirements for the position as posted. First, Price had a Bachelor of Science degree and an Associate of Science degree, and had worked in a management position with FedEx for four years, and in its security department for six years. Price had also completed several management training courses offered by FedEx. The panel also interviewed John Paone, a white male. Paone had served over fifteen years in the military, during which time he worked in positions requiring management, security, and intelligence skills. Paone also had eighteen months of local law enforcement experience as a detective in Peachtree City, Georgia. Paone had been employed with FedEx as a Courier only six months at the time he applied for the position. While he did not have a bachelor's degree, Paone had 102 hours of college credit. The final applicant was Gary Faulkner, a white male, who had been employed by FedEx since 1992.

As part of the interview, each candidate was required to give a presentation on management interpersonal skills to the panel. Although Price stated that he felt the presentation went well, Hogan noted that Price's overhead slides contained several spelling and typographical errors, and that he exceeded the presentation time limit. After the interviews were completed, the panel members individually completed review forms and unanimously selected Paone as the top candidate. Price was ranked second by the panel members, after Paone but before Faulkner. Hogan then offered Paone

the Zone Manager position.

After being informed of the panel's decision, Price filed a discrimination charge with the EEOC. One of Price's principal contentions was that Paone was expedited through FedEx's Leadership Evaluation and Awareness Process ("LEAP"), a prerequisite to management positions with the company, in only one week, when the time period for completion is normally six to twelve months. Price had successfully completed the program prior to applying for the position, and alleged that Paone's special treatment raised an inference of discrimination. Although the EEOC initially issued a no-cause finding, it then reversed itself and issued a determination letter to Price, supporting his claims of discrimination.

Price subsequently filed suit against FedEx alleging racial discrimination in violation of Title VII. Price argued that he was clearly better qualified for the position than Paone, and also presented independent evidence of racial discrimination by Hogan. The District Court granted summary judgment in favor of FedEx, holding that Price had failed to present evidence showing that he was better qualified for the position, and rejecting Price's evidence of independent racial discrimination.

## II

We review a district court's grant of summary judgment de novo. *See Evans v. City of Houston*, 246 F.3d 344, 347 (5th Cir. 2001). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). On a motion for summary judgment, a court must review the facts in the light most favorable to the non-movant. *Walker v. Thompson*, 214 F.3d 615, 624 (5th Cir. 2000).

In this case, we must decide whether the district court correctly determined that Price had failed to present evidence creating a genuine issue of material fact sufficient to defeat FedEx's motion for summary judgment.

Claims of racial discrimination based only on circumstantial evidence are evaluated under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-805 (1973). Under this three-part scheme, a plaintiff must first establish a prima facie case of discrimination by showing: (1) he belongs to a protected group; (2) he was qualified for the position sought; (3) he suffered an adverse employment action; and (4) he was replaced by someone outside the protected class. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).

If a plaintiff is successful in establishing his prima facie case, a presumption of discrimination arises and in the second step of the analysis, the burden shifts to the defendant to produce a legitimate, nondiscriminatory justification for its actions. *McDonnell Douglas*, 411 U.S. at 802. The defendant's burden during this second step is satisfied by producing evidence, which, "*taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action." *Hicks*, 509 U.S. at 509 (emphasis in original). If the defendant articulates a reason that can support a finding that its actions were nondiscriminatory, the mandatory inference of discrimination created by the plaintiff's prima facie case drops out. *Hicks,* 509 U.S. at 510-11.

Finally, in the third stage of the burden-shifting framework, the plaintiff is given a "full and fair opportunity to demonstrate" that the defendant's proffered reason is not true, but instead is a pretext for intentional discrimination. *Hicks*, 509 U.S. at 507-8. On summary judgment, in this third step, the plaintiff must substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision. *See Rubinstein v. Adm'rs. of the Tulane*

*Educ. Fund,* 218 F.3d 392, 400 (5th Cir. 2000), *cert. denied*, 532 U.S. 937 (2001), *and cert. denied*, 532 U.S. 937 (2001); *Evans*, 246 F.3d at 351 (defining relevant inquiry as whether the plaintiff has presented evidence that the "justification was a pretext" for racial discrimination). If the plaintiff can show the employer's asserted justification is false, this showing, coupled with a prima facie case, may permit the trier of fact to conclude that the employer discriminated against the plaintiff without additional evidence. *Reeves v. Sanderson Plumbing Prods.*, *Inc.*, 530 U.S.133, 148 (2000).[1] However, such a showing will not always be enough to prevent summary judgment, because there will be cases where a plaintiff has both established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, yet "no rational factfinder could conclude that the action was discriminatory." *Id.* Whether summary judgment is appropriate depends on numerous factors, including "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered." *Id.* at 148-49.

The parties agree that Price made out a prima facie case by showing (1) he was black; (2) he applied and was qualified for the Zone Manager position; (3) he was rejected despite his qualifications; and (4) the Zone Manager position was filled by Paone, a white male. *Price v. Federal Express Corp.*, 127 F. Supp.2d 801, 806-807 (S.D. Tex. 2001). FedEx has asserted as its legitimate, nondiscriminatory reason, that they hired Paone based on his superior qualifications.[2] Thus, the issues

---

[1] Although *Reeves* was based on a motion for judgment as a matter of law, the standard is the same for summary judgment. *See Pratt v. City of Houston*, 247 F.3d 601, 607 n.3 (5th Cir. 2001).

[2] The district court concluded that FedEx had submitted competent evidence showing that it selected Paone because of his superior qualifications, based on Paone's management experience, military training, and ties to Atlanta area law enforcement. *See Price*, 127 F. Supp.2d at 809. "[T]he

in this case arise under the third, "pretext," stage of the analysis.

Price offers two alternative arguments to show that FedEx's proffered explanation is pretextual, and that he was the victim of intentional racial discrimination. Price argues first that he has presented evidence from which a reasonable factfinder could conclude that FedEx's justification is false. Second, he argues that by presenting evidence that he is clearly better qualified than Paone, he has effectively established pretext. In addition, Price argues that the district court incorrectly weighed the evidence presented.[3]

## III

### A

Price first argues that he has presented evidence showing that FedEx's justification is a pretext for discrimination.[4] He points to several facts to support his argument that FedEx's proffered reason

promotion of a better qualified applicant is a legitimate and nondiscriminatory reason for preferring the successful applicant over the rejected employee who claims that the rejection was discriminatory." *Jefferies v. Harris County Cmty. Action Ass'n.,* 693 F.2d 589, 590 (5th Cir. 1982).

[3] Price raises an additional argument, that the district court failed to view the evidence in the light most favorable to him. This argument is encompassed by his other claims and will be addressed in the body of the opinion. Although Price made an argument of intentional discrimination by Hogan before the district court, he does not raise it on appeal. Thus, we do not address it in this opinion.

[4] Price maintains that the district court erred by requiring him to present additional evidence of intentional discrimination in order to survive summary judgment, in contravention of the Supreme Court's holding in *Reeves.* The district court, in its decision, stated that "a reason cannot be proved to be 'a pretext for *discrimination,*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *Price*, 127 F. Supp.2d at 807 (quoting *Hicks*, 509 U.S. at 513 (emphasis in original)). We note that this is but one statement of many taken from the district court's lengthy discussion of the appropriate standard for summary judgment. The court actually applied a two-part test to FedEx's motion, holding that Price failed to produce "substantial evidence which (1) creates a fact issue as to whether the decision to hire Paone's [sic] was actually motivated by FedEx's perception that Paone was better qualified, *and* (2) creates a reasonable inference that racial discrimination was a determinative factor in the decision not to promote Price to the position

is false. First, he emphasizes that Paone did not have a college degree, which was listed as a requirement in the job posting. Second, Price argues that Paone lacked the requisite five years of law enforcement or security experience.[5] Finally, Price points out that Paone had not received LEAP certification at the time he applied for the position.[6] In sum, Price posits that these factors are persuasive evidence that FedEx's proffered explanation is unworthy of credence, because they show that Paone was not minimally qualified for the position, let alone more qualified than Price.

---

ultimately filled by Paone." *Price*, 127 F. Supp.2d at 808. We do not believe the district court misapplied the standard as set forth in *Reeves*. Price correctly asserts that he is not required to present additional independent evidence of discrimination under *Reeves*. *See Blow v. City of San Antonio*, 236 F.3d 293, 298 (5th Cir. 2001) (reiterating that no "additional, independent evidence of discrimination" is required); *Ratliff v. City of Gainesville*, 256 F.3d 355, 361-62 (5th Cir. 2001) (same). However, *Reeves* does not relieve a plaintiff of his burden to present evidence that will permit a rational factfinder to infer intentional discrimination. *Reeves,* 530 U.S. at 153 (stating that the "ultimate question" in cases alleging employment discrimination "is whether the plaintiff was the victim of intentional discrimination"). In addition, we have approved a similar formulation of the standard used by the district court. *See Vadie v. Miss. State Univ.*, 218 F.3d 365, 374 n.23 (5th Cir. 2000), *cert. denied*, 531 U.S. 1113 (2001), *and cert. denied*, 531 U.S. 1150 (2001) (stating that a plaintiff can avoid summary judgment when the "evidence taken as a whole (1) creates a fact issue as to whether each of the employer's stated reasons was what actually motivated the employer and (2) creates a reasonable inference that age was a determinative factor in the actions of which the plaintiff complains").

[5] Price also argues on appeal that Paone lacked knowledge of FAA regulations, another requirement listed on the job posting. We do not consider this argument, however, as Price failed to raise it before the district court. *See Webb v. Cardiothoracic Surgery Assocs. of N. Tex., P.A.*, 139 F.3d 532, 539 n.6 (5th Cir. 1998). In addition, we note that Price has failed to present any evidence affirmatively showing that Paone lacked knowledge of such procedures.

[6] Evidence of differing treatment among similarly situated people can support a finding of discriminatory intent. *See Caserez v. Burlington Northern/Santa Fe Co.*, 193 F.3d 334, 338 (5th Cir. 1999) (finding evidence that plaintiff was treated differently from other white assistant superintendents supported an inference of discriminatory intent such that summary judgment was not appropriate). Price not only alleges disparate treatment in regard to LEAP, he also claims that his interviewing skills were judged more harshly than the other candidates' skills. We are not persuaded by Price's argument regarding LEAP, since Price was also the recipient of expedited treatment. His second argument lacks support in the record, as we have no evidence showing that Paone and Faulkner were evaluated differently.

We do not believe that Price has presented substantial evidence of pretext, such that a reasonable factfinder could conclude that FedEx's proffered explanation is false. His attempts to undermine Paone's qualifications are unpersuasive. First, we cannot say, based on the evidence before us, that Paone's 102 credit hours were not "equivalent," in the mind of FedEx, to a college degree when combined with Paone's military service and training. Second, Paone's fifteen-year term in the military, where he held positions requiring him to supervise interrogation operations, manage the security of an overseas operation, and also work as a "unit crime prevention and physical security officer," could reasonably have satisfied the requirement of five years of security and law enforcement experience. Finally, although Paone's expedited LEAP certification indicates he was treated more favorably than other FedEx employees, this alone is not an indication of discrimination. Moreover, this is not a persuasive argument because Price himself received favorable treatment when his supervisor waived the duration requirement for his current position so that he could apply for the Zone Manager position.

The evidence in the record supports FedEx's proffered justification. FedEx was seeking a new Zone Manager who could address the specific problems in the Atlanta office, and Paone's experience in the military, both managing and doing intelligence work, made him an attractive choice. Paone's references indicate that Paone had strong leadership skills and was accustomed to handling challenging tasks. For example, one of his commanding officers wrote the following: "Promote immediately. There is no job in the U.S. Army that CW2 Paone could not master. Mark his file. He is CW5 material with unlimited potential. Assign to difficult and challenging positions. He will get the job done."

In sum, we do not believe that Price has presented evidence from which a factfinder could

conclude that FedEx's proffered reason, that Paone was hired based on his superior qualifications, is false. While Price clearly met the qualifications for the Zone Manager position as posted, due to the specific needs of FedEx in combating the problems in Atlanta, Paone's skill set, including his significant military, security, and leadership experience, could have reasonably outweighed Price's better education and longer tenure with the company.

**B**

To establish that FedEx's justification was a pretext for discrimination, Price also presents evidence that he was clearly better qualified for the Zone Manager position. We have held in previous cases that a showing that the unsuccessful employee was clearly better qualified is enough to prove that the employer's proffered reasons are pretextual. *See EEOC v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1444 (5th Cir. 1995) ("A fact finder can infer pretext if it finds that the employee was 'clearly better qualified' (as opposed to merely better or as qualified) than the employees who are selected."); *see also Odom v. Frank*, 3 F.3d 839, 845-46 (5th Cir. 1993) ("If, however, the passed over applicant who is protected against discrimination is *clearly better qualified* for the position in question, a finding of pretext masking discrimination can be supported by the promotion of the less qualified person.") (emphasis in original). The district court rejected this argument, finding that the "overwhelming evidence" demonstrated that if anything, Paone may have been better qualified. *Price*, 127 F. Supp.2d at 809.

Showing that two candidates are similarly qualified does not establish pretext under this standard. *See Odom*, 3 F.3d at 846 (finding applicants to be "similarly qualified," when plaintiff had some criminal experience, good recommendation letters, supervisory experience, and longer tenure with the employer, but less relevant work experience in criminal investigations); *La. Office of Cmty.*

-10-

*Servs.*, 47 F.3d at 1445 (rejecting claim of non-promoted employee in age discrimination case when evidence indicated at best only that she was *as qualified* as the selected applicants) (emphasis in original). In order to establish pretext by showing the losing candidate has superior qualifications, the losing candidate's qualifications must "leap from the record and cry out to all who would listen that he was vastly)) or even clearly)) more qualified for the subject job." *Odom,* 3 F.3d at 847.

As we have already established, Price has failed to disprove FedEx's explanation that Paone was better qualified for the position. Price's argument regarding his superior qualifications fails for the same reasons. Price's better education, work experience, and longer tenure with the company do not establish that he is clearly better qualified. *See Nichols v. Lewis Grocer*, 138 F.3d 563, 568-69 (5th Cir. 1998) (holding that losing applicant's longer tenure and more varied work experience with the company did not make her "clearly better qualified" than the winning applicant). Although Price's qualifications are sufficient, they do not "leap from the record" when contrasted with Paone's management, security, and intelligence experience. Thus, Price has also failed to establish pretext through his own superior qualifications.

**IV**

Assuming, arguendo, that Price has presented evidence showing that FedEx's explanation is pretextual, his evidence of pretext does not support an inference that intentional discrimination was the real reason for the employment decision. *See Reeves*, 530 U.S. at 148 (noting that there will be cases where the plaintiff establishes both a prima facie case and some evidence of pretext, yet "no rational factfinder could conclude that the action was discriminatory"); *Pratt v. City of Houston*, 247 F.3d 601, 606 (5th Cir. 2001) (requiring evidence of pretext permitting a rational finder of fact to conclude that the employer discriminated against the plaintiff on the basis of race). In *Reeves*, the

Court recognized that a prima facie showing, combined with evidence of pretext, may not always be enough to defeat judgment as a matter of law, stating that "if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted evidence that no discrimination had occurred," the employer may be entitled to judgment in its favor. *Reeves*, 530 U.S. at 148.

This case presents facts similar to those considered in our decision in *Vadie v. Mississippi State University*, 218 F.3d 365 (5th Cir. 2000). In *Vadie*, mindful that the factual inquiry in an Title VII case is "[whether] the defendant intentionally discriminated against the plaintiff," we rejected the plaintiff's claim when he failed to present "a scintilla of evidence" that national origin played any role in the hiring decision. *Id.* at 372-73. Although the plaintiff argued that the fact that a less-qualified candidate was hired instead of him indicated that the employer's justification was pretext, we concluded that he had failed to meet the standard set forth in *Reeves*, "that the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated. . .at all times remains with the plaintiff." *Id.* at 374 n.23 (quoting *Reeves*, 530 U.S. at 143).

Another recent decision of this circuit, in which we upheld a grant of summary judgment, supports our conclusion. In *Rubinstein*, we rejected a professor's claims of discrimination based on his national origin and religion, even after he had put forth some evidence of pretext, concluding that the university's proffered reasons ) ) that the plaintiff was a poor teacher and inactive university citizen ) ) combined with the "overall lack of any evidence of discriminatory intent," were sufficient to defeat the plaintiff's claim. 218 F.3d at 400. Because the plaintiff's "evidence to rebut the non-discriminatory reasons offered by [his employer] [was] not so persuasive so as to support an inference that the real reason was discrimination," we held that he had failed to meet his burden. *Id.* Price, like

-12-

the plaintiffs in both *Vadie* and *Rubinstein*, has failed to present evidence from which a factfinder could infer racial discrimination.

Finally, in cases where we have applied *Reeves* to reverse a district court's grant of summary judgment, the evidence of pretext was considerably more substantial than the evidence presented by Price. In *Pratt,* two unsuccessful candidates brought claims of racial discrimination after failing to receive a promotion. 247 F.3d at 605. We held that the plaintiffs had made a sufficient showing of pretext, in light of the evidence showing that the plaintiffs were obstructed in their efforts to complete the hiring process, the plaintiffs' qualifications were superior, the successful candidate was given special treatment, and the supervisor had allegedly discriminated on previous occasions. *Id.* at 607. Similarly, in *Blow*, we held that a plaintiff had presented sufficient evidence of pretext when the evidence indicated that the employer's proffered reason) ) that plaintiff's application was not received in time) ) could in fact be false. 236 F.3d at 297-98. In *Blow*, the plaintiff offered evidence indicating that she was misinformed about the application timeline, and that an outside applicant was hired before she could even be considered. *Id.* at 295.

Price has failed to make a comparable showing. He was well aware of the open position, and was assisted in the application process by his current supervisor. Price not only obtained an interview, thus advancing to the final stage of the hiring process, he was the number two candidate for the position, ranked ahead of another white candidate. The qualifications for the Zone Manager position remained the same in each of the four postings by Hogan, and four white candidates were rejected prior to the time Price even applied for the position.

We conclude that Price, in his attempt to rebut FedEx's proffered explanation, has failed to present evidence from which a reasonable factfinder could infer he was intentionally discriminated

-13-

against.

**V**

Finally, Price argues that the district court failed to give proper credence to the Equal Employment Opportunity Commission's (EEOC) determination letter. Price argues this letter was highly probative and should have been considered during the court's factfinding. We disagree with Price's contention that the district court erred. Price relies on *Smith v. Universal Services, Inc.* to support his argument. 454 F.2d 154 (5th Cir. 1972). In *Smith*, we held that the district court was required to take an EEOC investigative report into consideration when deciding a Title VII claim, because failure to do so would be "wasteful and unnecessary." *Id.* at 157. *Smith* can be readily distinguished because that case involved an EEOC investigative report, as opposed to a single determination letter. *Id.* (referring to contents of report as containing summary of charges, review of facts as developed during investigation, and finding of probable cause). As far as we can determine from the record, the EEOC in this case never conducted interviews with anyone other than Price, or compiled an investigative report. Furthermore, there is no evidence in this case indicating that the district judge *ignored* the EEOC's letter, unlike the facts of *Smith*. *Id.* at 158. We therefore find *Smith* unpersuasive.

In addition, the EEOC's findings of racial discrimination are not dispositive in later racial discrimination suits. Despite an earlier positive finding of discrimination by the EEOC, we have held in subsequent suits that the plaintiff was not discriminated against by his or her employer. *See Vadie,* 218 F.3d at 370 (upholding judgment as a matter of law reversing jury verdict after plaintiff had filed a charge with the EEOC and had received a right to sue letter); *Odom*, 3 F.3d at 843 (holding that district court's finding that plaintiff was discriminated against was clearly erroneous, despite EEOC's

conclusion that plaintiff had been discriminated against); *Cf. Smith*, 454 F.2d at 157 (stating that subsequent civil litigation is de novo proceeding, "completely separate from the actions of the EEOC").

## VI

"The ultimate question in every employment discrimination case . . . is whether the plaintiff was the victim of intentional discrimination." *Reeves*, 530 U.S. at 153. Because Price has failed to produce evidence such that a reasonable factfinder could conclude that FedEx's proffered reason is false, and has also failed to present evidence raising an inference of racial discrimination, we AFFIRM the district court's grant of summary judgment in favor of the defendant.