United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 13, 2007**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 06-30953
(Summary Calendar)

_____

WESLEY R. GREENE,

Plaintiff-Appellant,

versus

JOHN E. POTTER, U.S. POSTMASTER GENERAL,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Western District of Louisiana
(6:02-CV-1567)

_____

Before DeMOSS, STEWART, and PRADO, Circuit Judges.

PER CURIAM:[*]

This appeal arises from the district court's grant of judgment as a matter of law, pursuant

to Federal Rules of Civil Procedure Rule 52(c), in favor of the United States Postal Service

_____

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published
and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

("Postal Service") on Walter Greene's claims of discrimination under the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, and the Rehabilitation Act of 1973, 29 U.S.C. § 794. We affirm the district court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Greene, an African-American male, suffers from Chronic Paranoid Schizophrenia and Depression. Greene worked as a distribution clerk for the Postal Service in New Iberia, Louisiana from October 16, 1982 to September 15, 2000. On June 21, 2000, the Postal Service sent a Notice of Proposed Removal to Greene, citing his unsatisfactory attendance due to excessive unscheduled absences within a two-month period. Greene contends that the absences were a result of his medical condition but declined to submit medical documentation. The Postal Service eventually terminated his employment.

Prior to his termination, the Postal Service referred Greene to the Employee Assistance Program and altered his schedule twice, but the unscheduled absences continued. According to the Postal Service, Greene's absences disrupted postal operations. Greene argues that Robbie LeBlanc, a white male, non-disabled distribution clerk for the Postal Service, accrued even more unscheduled absences than himself without the consequence of termination. In response, the Postal Service maintains that LeBlanc was typically late returning from lunch, which did not disrupt postal operations.

On July 24, 2002, Greene filed suit against the Postal Service, alleging discrimination based on his race and disability. The Postal Service filed a motion for summary judgment. On May 4, 2004, the district court granted in part and denied in part summary judgment. The court

granted the motion on Greene's claims under the Americans with Disabilities Act and retaliatory discharge, and denied the motion on Greene's claims under the Rehabilitation Act of 1973 and Title VII of the Civil Rights Act of 1964.

On August 14, 2006, the district court conducted a bench trial and at the close of Greene's case-in-chief, dismissed the discrimination claims with prejudice pursuant to Rule 52(c). On September 8, 2006, Greene filed a timely notice of appeal.

## II. STANDARD OF REVIEW

Rule 52(c) provides that "[i]f during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party." We review findings of fact made pursuant to Rule 52(c) for clear error and conclusions of law de novo. *Bursztajn v. United States*, 367 F.3d 485, 488-89 (5th Cir. 2004).

## III. DISCUSSION

A. Disability Discrimination

To establish a prima facie case of disability discrimination under the Rehabilitation Act, the employee must prove the following: (1) he suffers from a disability; (2) he was otherwise qualified for the work; (3) he worked for an employer that receives federal assistance; and (4) he was discriminated against solely because of his disability. 29 U.S.C. §§ 701 *et seq.*; *Hileman v. City of Dallas, Tex.*, 115 F.3d 352, 353 (5th Cir. 1997). Section 705 of the Rehabilitation Act defines disability as a "physical or mental impairment that substantially limits one or more of the major life activities of such individual; a record of such impairment; or being regarded as having

3

such an impairment." 29 U.S.C. § 705(9)(B). "Merely having an impairment does not make one disabled for purposes of the ADA. Claimants also need to demonstrate that the impairment limits a major life activity." *Toyota Motor Mfg. Ky. v. Williams*, 534 U.S. 184, 194 (2002). Major life activities include functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. 29 C.F.R. 1630.2.

In this case, Greene asserts that he suffers from a "mental impairment that substantially limits one or more of [his] major life activities . . . ." Whether a person is substantially limited in a major life activity must be determined on a case-by-case basis. *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 481 (1999). "If a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures-both positive and negative-must be taken into account when judging whether that person is 'substantially limited' in a major life activity and thus 'disabled' under the Act." *Id.* at 482. Therefore, Greene must prove he is disabled in light of any mitigating measures, including medication.

Greene maintains that the medication prescribed to treat his Chronic Paranoid Schizophrenia and Depression caused him to sleep late, which in turn, made him unable to arrive at work in a timely manner. The parties stipulated that Greene was diagnosed with Chronic Paranoid Schizophrenia and Major Depression. The record lacks evidence, however, that his condition affected a major life activity. To establish his disability, Greene relied solely on the pre-trial stipulation regarding his medical condition and his own testimony regarding the drowsiness experienced after taking the prescribed medication. At trial, Greene also admitted to not taking his medication on a regular schedule, as necessary to control his symptoms, and to his

4

occasional use of drugs and alcohol. Although Greene contends that he provided the Postal Service with a doctor's note stating the need for him to start work at a later time, he did not introduce this evidence at trial. Further, Greene presented no medical evidence that his impairment limited his major life activity of sleeping or working or that his impairment interfered with his ability to be in attendance at work. On the other hand, the Postal Service established that it referred Greene to the Employee Assistance Program on May 27, 1999, and again on December 20, 1999. The Postal Service also adjusted Greene's start time at two points during his employment. Based on the evidence, the district court properly found that Greene was not disabled under the Rehabilitation Act. Accordingly, Greene failed to establish a prima facie case of disability discrimination.

B. Race Discrimination

To establish a prima facie case of race discrimination, a plaintiff must show the following: (1) he is a member of a protected group; (2) he was qualified for his position of employment; (3) he suffered an adverse employment action; and (4) someone outside his protected group replaced him. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993). If the plaintiff establishes a prima facie case, then the burden shifts to the defendant to show a legitimate, non-discriminatory justification for the adverse employment action. *Price v. Federal Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002). If the defendant fulfills this burden, then the plaintiff must prove the defendant's proffered reason for the employment action is merely a pretext for intentional race discrimination. *Price*, 283 F.3d at 720.

5

As a legitimate, non-discriminatory justification for Greene's termination, the Postal Service maintains that Greene had twenty-six unexcused absences documented between February 14, and May 17, 2000, which impacted postal operations. Greene contends that Robbie LeBlanc, a white distribution clerk, accumulated more that twenty-six unexcused absences without the consequence of termination.

"When a supervisor of one race treats employees of the same race more favorably than similarly situated employees of another race under circumstances that are essentially identical, a presumption of discriminatory intent is raised." *Wallace v. Methodist Hospital Sys.*, 271 F.ed 212, 221 (5th Cir. 2001) (quoting, *Barnes v. Yellow Freight Sys., Inc.*, 778 F.2d 1096, 1101 (5th Cir. 1985)). To establish disparate treatment, the plaintiff must show that the employer treated other employees in "nearly identical circumstances" in a different manner. *Okoye v. The Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001). In the situation of a work rule violation, "a Title VII plaintiff may establish a prima facie case by showing 'either that he did not violate the rule or that, if he did, white employees who engaged in similar acts were not punished similarly.'" *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995) (quoting, *Green v. Armstrong Rubber Co.*, 612 F.2d 967, 968 (5th Cir. 1980)).

Unexcused absences and excessive tardiness are violations of the Postal Service rules and regulations. The rules do not distinguish these violations in terms of "impact" on postal operations. Whether to designate an absence as scheduled or unscheduled, however, rests in the discretion of the supervisor. Keith LeBlanc testified that Robbie LeBlanc's absences substantially varied from Greene's absences in that Greene caused disruption to postal

6

operations. Greene either arrived late or simply failed to show up for work. On the other hand, Robbie LeBlanc arrived to work but often returned late from lunch breaks. The district court found Keith LeBlanc's testimony credible and objective on the legitimate, non-discriminatory reason offered to justify Greene's termination and the disparate treatment of Greene and Robbie LeBlanc. Moreover, Greene presents no evidence to rebut the Postal Service's legitimate, non-discriminatory reason for his termination. The district court also heard testimony that Greene received leniency on previous occasions for unscheduled tardiness and absences from his supervisor, the Postal Service twice adjusted Greene's tour time, and he received warnings about his absence to no avail. We conclude that the district court properly held that Greene failed to show the Postal Service's reason for terminating him was pretextual.

## IV. CONCLUSION

For the foregoing reasons, we affirm the district court's judgment.