**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 19, 2013

No. 12-20691

Lyle W. Cayce
Clerk

WILL CHURCHILL,

Plaintiff-Appellant

v.

TEXAS DEPARTMENT OF CRIMINAL JUSTICE,

Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:11-CV-2458

Before STEWART, Chief Judge, DAVIS, and WIENER, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Will Churchill ("Churchill") appeals the dismissal on summary judgment of his employment discrimination claim against Defendant Texas Department of Criminal Justice ("TDCJ"). Finding no error, we AFFIRM for the reasons more fully set forth below.

I.

Churchill, a 55-year-old, African American male, alleges that he was discriminated against based on his race when TDCJ failed to hire him for the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-20691

position of Sergeant of Correctional Officer, Correctional Training Instructor ("Training Instructor").[1] The position instead went to Vickie Mossbarger ("Mossbarger"), a white female, who Churchill contends was substantially less qualified for the position.

Before applying for the instructor position, Churchill worked for the TDCJ for approximately twenty-five years, retiring in January 2010. After six months of retirement, Churchill sought to return to work and applied for the Training Instructor position. In order to qualify for the position, a candidate needed a high school diploma or GED and a minimum of two years of full time correctional custody or law enforcement experience. Churchill and nine other candidates—including Mossbarger—met the minimum qualifications and interviewed for the position. Major Charles Siringi, who is also African American, was the primary interviewer and he, along with Brian Blanchard, TDCJ's assistant director of training, conducted the interviews. While he did not participate in the interview process or make the hiring decision, Jason Heaton, the Director of TDCJ's Correctional Training and Staff Development Department, reviewed the packet of candidate selection documents and signed off on the decision.

The interview of each applicant lasted approximately fifteen minutes. For ten minutes, candidates were asked a specific set of identical questions. Siringi transcribed the candidates' answers. For five minutes, candidates gave a presentation on a topic of their choosing. Churchill spoke on investigating employee-offender relationships; Mossbarger gave a PowerPoint presentation on time management accompanied with handouts. In evaluating the candidates, Siringi used a standardized instructor evaluation form which assessed

---

[1] While Churchill initially alleged age discrimination as well, that claim was dismissed and is not at issue in this appeal.

No. 12-20691

performance on a 1-5 scale in 14 different categories. Out of a possible 70 points, Churchill scored 64; Mossbarger scored 68.[2]

After Siringi and Blanchard agreed to select Mossbarger, Siringi gathered the required documents to be submitted to Director Heaton for his review. TDCJ policy lists a number of documents to be included in the packet, and the presentation grading sheets and the question and answer documents for each candidate interviewed are among those.[3] One specific form in the packet asked for "all job-related factors upon which the decision was based." Under the heading "Rationale for Selection," Siringi wrote: "Training background along with agency policies experience related to Human Resources and offender classification knowledge."

Once Churchill learned of Mossbarger's selection for the position, he filed a charge of discrimination with the Equal Employment Opportunity Commission and subsequently filed suit. Churchill admitted that he had no direct evidence of racial animus on the part of Siringi, Blanchard, or Heaton, but he contended that race motivated the hiring decision because Mossbarger was a white female with "less experience and less education" than he.

The district court granted summary judgment for TDCJ, finding that Churchill failed to raise a genuine issue of material fact that discrimination occurred. Churchill now appeals.

---

[2]   Of the fourteen different categories, Mossbarger and Churchill received the same score in nine categories; Mossbarger outscored Churchill in four categories: "Voice Control," "Trainee Participation," "Training Aids," and "Overall Presentation Skills"; and Churchill outscored Mossbarger in one category: "Gestures."

[3]   According to the "Checklist for Selection Packets," Form "PERS 287, Interview Documentation Form (one [1] for each applicant interviewed)" is to be included.

No. 12-20691

II.

This court reviews a district court's grant of summary judgment de novo, viewing all disputed facts and inferences in the light most favorable to the non-movant. *Rockwell v. Brown*, 664 F.3d 985, 990 (5th Cir. 2011). Summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Mere conclusory allegations are insufficient to defeat summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

III.

Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer to discriminate against an employee "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Intentional discrimination may be proven by either direct or circumstantial evidence. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). When there is no direct evidence of discrimination, a claim will be analyzed under the familiar *McDonnell Douglas* burden-shifting framework. *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Because there is no direct evidence of discrimination here, the *McDonnell Douglas* framework applies.

Accordingly, the plaintiff alleging discrimination must first make a prima facie showing that: "(1) he belongs to a protected class; (2) he applied for and was qualified for a position for which applicants were being sought; (3) he was rejected; and (4) a person outside of his protected class was hired for the position." *Burrell*, 482 F.3d at 412. If the plaintiff succeeds in making the prima facie case, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for the employer's action. *McDonnell Douglas*, 411 U.S. at 802. If the employer offers a nondiscriminatory reason, the burden shifts

back to the plaintiff to show that "the defendant's proffered reason is not true, but instead is a pretext for intentional discrimination." *Price v. Fed. Exp. Corp.*, 283 F.3d 715, 720 (5th Cir. 2002); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). A plaintiff may demonstrate pretext by "showing that the employer's proffered explanation is false or unworthy of credence." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (internal quotation marks omitted). "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." *Id.* Alternatively, a "fact finder can infer pretext if it finds that the employee was 'clearly better qualified' (as opposed to merely better or as qualified) than the employees who are selected." *EEOC. v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1444 (5th Cir. 1995); *see also Price*, 283 F.3d at 723.

On appeal, the parties do not dispute that Churchill established a prima facie case. In articulating a legitimate, nondiscriminatory reason, TDCJ contends that Mossbarger outperformed Churchill and the other candidates in the interview and that interview performance is the most important criterion. Consequently, she was offered the job.

This court has held that "[a]n employer's subjective reason for not selecting a candidate, such as a subjective assessment of the candidate's performance in an interview, may serve as a legitimate, nondiscriminatory reason for the candidate's non-selection." *Alvarado v. Tex. Rangers*, 492 F.3d 605, 616 (5th Cir. 2007). Even so, an employer "must articulate in some detail a more specific reason than its own vague and conclusional feeling about the employee." *Patrick v. Ridge*, 394 F.3d 311, 317 (5th Cir. 2004).

Here Heaton found Mossbarger's interview answers superior to Churchill's, as her answers were "more thorough and more specific to the questions that were asked." And Blanchard stated that Mossbarger's presentation was "demonstrably more professional and focused than Mr.

No. 12-20691

Churchill's and certainly more original." Siringi found that Churchill did not demonstrate much enthusiasm about his topic and that the handouts he used with his presentation were appropriate, but they could have been taken from existing TDCJ materials. These conclusions are reflected in the high score (68/70) that Mossbarger received on her presentation score sheet.

Because TDCJ offered a nondiscriminatory reason for its decision, the burden shifts back to Churchill to show that TDCJ's reason is merely a pretext for discrimination. Churchill has two methods available to try to prove that TDCJ's proffered reason was a pretext for racial discrimination: (1) Churchill could show that TDCJ's proffered explanation is false or unworthy of credence; or (2) Churchill could try to prove that he is "clearly better qualified" than the person selected for the position. *Burrell*, 482 F.3d at 412. Churchill argues both.

A.

Churchill first argues that TDCJ's proffered reasons for selecting Mossbarger are false or unworthy of credence. Namely, Churchill argues that Siringi's written rationale for selecting Mossbarger ("Training background along with Agency policies experience related to Human Resources and offender classification knowledge") were unmentioned job requirements that were not listed in the posting for the position, but were nonetheless given as the rationale for selecting Mossbarger.  Churchill invokes dicta from this court's decision in *Moss v. BMC Software, Inc.*, 610 F.3d 917, 926 (5th Cir. 2010), which states: "An employer's reliance on a previously unmentioned job requirement to justify a challenged hiring decision would raise a genuine issue of material fact as to pretext."

Churchill also argues that TDCJ Policy PD-71 lists as "factors to be considered when selecting an applicant": "applicant's response to interview questions"; "[j]ob-related education, experience, certification, and training"; "communication skills"; and "[e]mployer reference information." Siringi and

Blanchard stated that the interview is the most important factor and thus they did not consider applicants' education, experience, certification, or training after they were satisfied the candidates had met the minimum education and experience requirements to qualify for an interview.

Further, Churchill claims that TDCJ has provided inconsistent reasons for its hiring decision and that such inconsistency is evidence of pretext. *See Burrell*, 482 F.3d at 415 (finding that when a rationale for a hiring decision does not remain the same, a jury can infer pretext from this "unexplained inconsistency"). Churchill argues that in response to an interrogatory, TDCJ stated that Mossbarger was selected, in part, because of her "varied experience with the agency," but that this statement is inconsistent with Siringi's written rationale for selecting Mossbarger, which did not mention her varied experience with the agency.

Our review of the record reveals the following. Blanchard stated that years of experience and formal education are not the best indicators of who will make the best training instructor; rather, in the search for an effective instructor, prior tenure or education are "of little consequence." Further, Blanchard claimed that the length of service has never been a primary consideration on any selection board on which he has served. Moreover, Siringi indicated that he was "puzzled" by Churchill's suit as Siringi is the same race as Churchill, and Siringi has recently selected African Americans as trainers in "three out of four selection boards"—this instance being the one exception in which he did not select an African American.

While Churchill has offered at least some evidence of pretext, it is clear to us on this record that TDCJ must prevail nonetheless. First, the "mere fact that an employer uses subjective criteria is not . . . sufficient evidence of pretext." *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 882 (5th Cir. 2003). Additionally, as this court has stated many times, "[A]n employer's 'disregard of its own hiring

system does not of itself conclusively establish that improper discrimination occurred or that a nondiscriminatory explanation for an action is pretextual.'" *EEOC v. Tex. Instruments Inc.*, 100 F.3d 1173, 1182 (5th Cir.1996) (quoting *Risher v. Aldridge*, 889 F.2d 592, 597 (5th Cir. 1989)).[4]

It is true that Siringi and Blanchard may not have followed "by the book" TDCJ hiring policy, and in retrospect Siringi admitted in his deposition that the rationale he wrote for selecting Mossbarger did not include everything he "wanted to put in it." He asserts that the information in the blank was accurate, but her interview performance was an *additional* justification for her selection.

Even so, we must remain cognizant that the ultimate issue is "whether the employer's selection of a particular applicant over the plaintiff was motivated by discrimination." *Deines v. Tex. Dep't. of Protective & Regulatory Servs.*, 164 F.3d 277, 281 (5th Cir. 1999) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)). In *Reeves*, the Supreme Court explained that although a plaintiff may have set forth sufficient evidence to reject the defendant's proffered explanation, it may still present a circumstance where "no rational factfinder could conclude that the action was discriminatory." 530 U.S. at 148. This could occur when "the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Id.*; *see Rubinstein v. Adm'r of Tulane Educ. Fund*, 218 F.3d 392, 400 (5th Cir. 2000) (affirming summary judgment for employer even though employee demonstrated some evidence of pretext because there was "an overall lack of any evidence of

---

[4] *See also Sanchez v. Tex. Comm'n on Alcoholism*, 660 F.2d 658, 662 (5th Cir.1981) ("The Commission's disregard of its own hiring system does not prove racial discrimination absent a showing that discrimination was a motive in the action taken.").

No. 12-20691

discriminatory intent" and employee's evidence of pretext was "not so persuasive so as to support an inference that the real reason was discrimination").[5]

While Churchill presented some evidence of pretext, our careful review of the record, viewed in the light most favorable to Churchill's claim, compels the conclusion that the evidence taken together does not raise a legitimate fact issue as to discriminatory intent.

Though Title VII plaintiffs need not always present evidence above and beyond their prima facie case and pretext, *see Reeves*, 530 U.S. at 148, recovery under Title VII still requires discrimination. Here the packet Siringi completed and submitted included the form with the written rationale for selection along with the presentation score sheet and interview answers. Siringi, an African American, functioned as the principal decision maker and it is uncontested that he had selected African Americans for training positions in the last three openings he filled. There is no evidence of any racial remarks or discriminatory animus exhibited by Siringi, Blanchard, or Heaton. Churchill's subjective belief that race was a motivating factor in the hiring decision because Mossbarger was white, female, and younger than he finds no support in the record. Churchill has raised "only a weak issue of fact" and therefore cannot survive summary judgment. *See id.*

B.

Churchill additionally argues that he established pretext by demonstrating he is "clearly better qualified" than Mossbarger. He argues that "evidence of [a] plaintiff's superior qualification is . . . probative of pretext." *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 357 (5th Cir. 2001) (citing

---

[5] *See also Pratt v. City of Hous., Tex.*, 247 F.3d 601, 606 (5th Cir. 2001) ("'A prima facie case and sufficient evidence to reject the employer's explanation' may permit a trier of fact to determine that an employer unlawfully discriminated, and may therefore be enough to prevent summary judgment. This showing, however, is not always enough to prevent summary judgment in favor of the employer." (citation omitted) (quoting *Reeves*, 530 U.S. at 148)).

*Deines*, 164 F.3d at 281). One can hardly find mendacity by the employer when "its judgments on qualifications are somewhere within the realm of reason." *Deines*, 164 F.3d at 282. The fact that one candidate has "better education, work experience, and longer tenure with the company do[es] not establish that he is clearly better qualified." *Price*, 283 F.3d at 723.

Here Churchill points to his education, certifications, and training experience to argue that he is clearly more qualified than Mossbarger. Churchill compares himself to Mossbarger in nine areas in which his qualifications exceed Mossbarger's. As the district court noted, however, Mossbarger met the minimum job qualifications and had her own array of  qualifications and certifications not considered or accounted for by Churchill.[6]

The district court rejected Churchill's argument that he was clearly more qualified. Churchill claims that in doing so it used an incorrect legal standard when it articulated that a losing candidate's qualifications must "leap from the record and cry out to all who would listen that he was vastly—or even clearly—more qualified for the subject job." *Id.* (quoting *Odom v. Frank*, 3 F.3d 839, 847 (5th Cir. 1993)). Churchill argues that this is no longer the correct legal standard because it was rejected by the Supreme Court in *Ash v. Tyson,* 546 U.S. 454 (2006). In *Ash*, the Supreme Court considered and rejected the Eleventh Circuit's formulation that "[p]retext can be established through comparing qualifications only when the disparity in qualifications is so apparent as virtually to jump off the page and slap you in the face," because it was "unhelpful and imprecise." *Id.* at 456-57.

---

[6] Mossbarger had, for example, certificates in Basic Supervisory Training, Hostage Negotiator Training, Classification Case Manager Training, Foundation Skills for Trainers, TDCJ Pre-Service and In-Service Training, HR Rep Training, Safe Prison Program Training, Techniques for Group Instruction, and Training for Trainers.

No. 12-20691

We agree with Churchill that the district court's recitation of the "leap from the record" standard is similarly "unhelpful and imprecise." *See id.* Even so, it is clear that a plaintiff must still establish that he is "clearly better qualified" under *Ash*.[7] Moreover, it is clear that the "clearly better qualified" standard "should be understood to mean that disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Bright v. GB Bioscience Inc.*, 305 F. App'x 197, 205 n.8 (5th Cir. 2008) (quoting *Deines*, 164 F.3d at 280-81).

Regardless of the terminology used by the district court, our review of the record reveals that the conclusion reached by the district court was plainly correct. Demonstrating that one is "clearly better qualified" is understandably very difficult to meet so as to avoid judicial second-guessing of business decisions; and it is well-established that better education, work experience, and/or longer tenure with the company does not necessarily make a candidate clearly better qualified. *See Price*, 283 F.3d at 723. Selecting Mossbarger over Churchill was well within the "realm of reason," *see Deines*, 164 F.3d at 282, and as discussed above, Churchill failed to raise a genuine issue of material fact that TDCJ's selection decision was motivated by discrimination. Therefore, summary judgment was appropriate.

## IV.

For the reasons set forth above, we AFFIRM the judgment of the district court.

---

[7] *Moss*, 610 F.3d at 927 ("The standard articulated . . . 'clearly better qualified,' is good law.").

11