# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 18-60245
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

October 3, 2018

Lyle W. Cayce
Clerk

PATRICK BOYD,

      Plaintiff - Appellant

v.

MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY; ALBERT SANTA
CRUZ, Individually and in his Official Capacity as Commissioner of the
Mississippi Department of Public Safety; DONNELL BERRY, Individually
and in his Official Capacity as Director of Mississippi Highway Safety Patrol
and Assistant Commissioner of the Department of Public Safety,

      Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:16-CV-177

Before KING, SOUTHWICK, and ENGELHARDT, Circuit Judges.

PER CURIAM:*

    Patrick Boyd brought suit against his employer, the Mississippi
Department of Public Safety, and against two of its officers for racial

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 18-60245

discrimination and for violation of various constitutional rights. The district court granted summary judgment to the defendants. We AFFIRM.

FACTUAL AND PROCEDURAL BACKGROUND

Boyd began his employment with the Mississippi Department of Public Safety ("MDPS") as a Trooper in December 2000. At the time of the events underlying this dispute, Boyd was Captain of Troop H and a member of the Strategic Weapons and Tactics ("SWAT") team. Boyd's race is white. On March 26, 2015, Boyd sent an email to other officers and employees of the MDPS, to which he attached a list of grievances. Some concerned MDPS's promotion policies and testing, and were motivated in part by Boyd's belief that the MDPS was "favoring one race over the others." Boyd stated in his deposition that all the recipients of his email were white, and none of the recipients were above Boyd in the chain of command.

On April 8, Boyd was called into a meeting at MDPS headquarters. Major O'Banner, Colonel Berry, Lieutenant Colonel Myers, and Commissioner Santa Cruz were present. During this meeting, which lasted approximately one hour, Boyd's superiors questioned him about the March 26 email.

On April 13, Boyd was handed at MDPS headquarters in Jackson an order transferring him from Troop H to the salvage division. That same day, Boyd received an email notifying him that he was removed from the SWAT team. Colonel Berry testified that he transferred Boyd to the salvage division because Boyd had caused a "racial ruckus" and tension in Troop H. He also said he removed Boyd from the SWAT team because SWAT team members "didn't feel safe going into a building" with Boyd.

After the April 13 meeting, Boyd was involved in a vehicle accident while driving a patrol vehicle on Interstate 20 in the rain. After passing another vehicle, Boyd was traveling approximately 100 miles-per-hour in a 70 miles-

No. 18-60245

per-hour zone.  As Boyd moved back into the left lane after passing the vehicle from the right, he was cresting a hill.  Boyd hydroplaned, hit a guard rail, and totaled his patrol vehicle.

On May 13, Boyd received a document that charged him with a "Group III" offense for violating "safety rules where there exists a threat to life or human safety."  The charges referenced a prior November 2014 memo that explained that speeding in patrol cars when not responding to an emergency may constitute a Group III offense.  On May 28, a MDPS review panel held a hearing on the charges.  Boyd was represented by counsel, permitted to call his own witnesses, and allowed to strike two members of the panel.  The panel determined that Boyd violated a safety rule "where there exists a threat to life or human safety."  On May 29, Boyd was terminated from the MDPS.  The reason given for his termination was the Group III offense.

Boyd brought this suit on March 9, 2016.  He sought damages as well as injunctive and declaratory relief, claiming that he was subjected to race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and 42 U.S.C. § 1981A.  Boyd also claimed that his rights were violated under the First Amendment to the United States Constitution and the Equal Protection Clause of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983.  After discovery was completed, the defendants moved for summary judgment.  The district court found no genuine disputes of material fact as to any element of Boyd's claims and entered judgment for the defendants.

## DISCUSSION

We review a grant of summary judgment *de novo*.  *Cooley v. Hous. Auth. of City of Slidell*, 747 F.3d 295, 297 (5th Cir. 2014).  "Summary judgment is warranted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine [dispute] as to any material fact

and that the movant is entitled to judgment as a matter of law." *Id.* at 297-98 (alteration in original) (quoting *Duval v. N. Assurance Co. of Am.*, 722 F.3d 300, 303 (5th Cir. 2013)). We need not adopt the reasoning of the district court but "may affirm the district court's decision on any grounds supported by the record." *Phillips ex rel Phillips v. Monroe Cnty*, 311 F.3d 369, 376 (5th Cir. 2002).

### I. *Title VII Claim*

Boyd argues that MDPS discriminated against him on the basis of race in violation of Title VII. Boyd's Title VII claim is analyzed under the burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-805 (1973). *Price v. Fed. Express Corp.*, 283 F.3d 715, 719-20 (5th Cir. 2002). "Under this three-part scheme, a plaintiff must first establish a prima facie case of discrimination by showing: (1) he belongs to a protected group; (2) he was qualified for the position sought; (3) he suffered an adverse employment action; and (4) he was replaced by someone outside the protected class." *Id.* at 720. If a plaintiff makes a prima facie case, the burden shifts to the employer to produce a legitimate, non-discriminatory reason for the adverse employment action. *Id.* If the defendant produces such a reason, the plaintiff must demonstrate that the defendant's proffered reason was a pretext for discrimination. *Id.*

Assuming without deciding that Boyd has made the required showing for a prima facie case, the defendants have articulated a legitimate non-discriminatory reason for Boyd's transfer to the salvage department and removal from the SWAT team, as well as his termination. The defendants stated that the purpose for the transfer to the salvage department was that Boyd caused a "racial ruckus" and tension within Troop H, and that he was removed from the SWAT team because some of the members "did not feel safe"

4

working with Boyd. Further, the defendants presented evidence that the reason for termination was Boyd's violation of a Group III offense. These are all legitimate, non-discriminatory reasons.

Boyd therefore must, under the third step of the *McDonnell Douglas* framework, create a genuine factual dispute that his violation of a Group III offense was a pretext for racial discrimination. Boyd attempts to show pretext by using the accident record of Officer Marshall Pack, who is black and was not terminated after vehicle accidents. For the first time on appeal,[1] Boyd presents details on two accidents involving Pack. One involved Pack backing into a mile marker post at 5 miles per hour while he was assisting another officer with a mentally ill individual. The other involved Pack's apparently hitting a deer. Boyd has not shown that either accident involved a "threat to life or human safety."

Boyd, in his reply brief, also highlights a crash report concerning Officer Derandy Butler. Boyd argues that Butler was not disciplined, that Butler was traveling 88 miles-per-hour in a 55 miles-per-hour zone, and that Butler was "not [responding to] an 'emergency.'" Boyd, though, provides no evidence to support that Butler's actions were not in response to an emergency. Furthermore, the report cited by Boyd shows that the road was dry, and the weather conditions were clear at the time of Butler's accident, as distinguished from the weather during Boyd's accident that would cause speeding to be objectively more dangerous. None of this supports the claim of pretext.

Boyd's other argument in support of his contention that his termination for a Group III offense was a pretext for racial discrimination was that "Plaintiff also was more experienced and qualified than his black successors."

---

[1] Boyd did not discuss any specific comparable incident in the district court. The district court was dismissive: "Apparently, Plaintiff expects the court to scour these hundreds of pages and find a 'needle in a haystack.'"

No. 18-60245

The relevance of that escapes us. The issue is whether Boyd was fired for non-discriminatory reasons, not the qualifications of his successors.

Finally, Boyd's argument that the "pre-termination hearing" cannot "be used by the district court to determine guilt and allow termination of an employee" is not relevant to the question of pretext. Boyd does not argue that he was subjected to a different hearing process than individuals of a different race. Boyd presented no evidence that creates a genuine dispute of material fact as to the findings of the pre-termination panel. Boyd has therefore not met his burden to introduce evidence to go before a jury on the issue of pretext.[2]

The district court properly granted summary judgment to the defendants on Boyd's Title VII claims.

### II. Constitutional Claims

Boyd argues that his transfer to the salvage department, his removal from the SWAT team, and his termination constituted violations of the Equal Protection Clause of the Fourteenth Amendment and the First Amendment. He seeks injunctive and declaratory relief against the defendants in their official capacities and monetary damages against Commissioner Santa Cruz and Colonel Berry in their individual capacities.

The "inquiry into intentional discrimination is essentially the same for individual actions brought under Sections 1981 and 1983, and Title VII." *Lauderdale v. Tex. Dep't of Criminal Justice, Inst. Div.*, 512 F.3d 157, 166 (5th Cir. 2007) (quoting *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996)). We have already explained that Boyd did not meet his burden to show that the defendants' stated reasons for his transfer to the salvage department,

---

[2] Boyd attempts to attack the credibility of MDPS's stated reasons for his transfer from Troop H and the SWAT team but provides no evidence to support that the reasons were a pretext for racial discrimination.

removal from the SWAT team, and termination were pretextual.  The district court was therefore correct in dismissing Boyd's Fourteenth Amendment Equal Protection claims against all defendants.

Boyd claims that his First Amendment rights, including the right to free speech, the right to petition for redress of grievances, and the right to free association, were violated by the defendants.  This argument concerns his March 26 email listing grievances.  Boyd has no evidence that his email motivated the department's decision to terminate him.  We have explained that the undisputed evidence is that the termination was caused by his violation of a safety rule "where there exists a threat to life or human safety."  We will analyze here the remaining claim, namely, that his transfer from Troop H to the salvage department and removal from the SWAT team were unlawful retaliation under the First Amendment.

To make a claim for retaliation under the First Amendment's right to free speech, the "plaintiff must establish that: (1) he suffered an adverse employment decision; (2) his speech involved a matter of public concern; (3) his interest in speaking outweighed the governmental defendant's interest in promoting efficiency; and (4) the protected speech motivated the defendant's conduct." *Howell v. Town of Ball*, 827 F.3d 515, 522 (5th Cir. 2016).  We first address the balance of interests.[3]  Pertinent considerations as to whether Boyd's interest in speaking outweighed MDPS's interest in promoting efficiency include "whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or

---

[3] We express no opinion concerning (1) whether Boyd's transfer from Troop H to the salvage department was an adverse employment action nor (2) whether Boyd's email constitutes speech involving a matter of public concern.

impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Rankin v. McPherson*, 483 U.S. 378, 388 (1987).

In a similar case, we held that a police officer's First Amendment interest in posting critical statements on social media concerning the police chief's leadership did not outweigh the police department's interest in preserving loyalty and close working relationships. *See Graziosi v. City of Greenville Miss.*, 775 F.3d 731, 740 (5th Cir. 2015). "Because 'police departments function as paramilitary organizations charged with maintaining public safety and order, they are given *more* latitude in their decisions regarding discipline and personnel regulations than an ordinary government employer.'" *Id.* (quoting *Nixon v. City of Houston*, 511 F.3d 494, 498 (5th Cir. 2007)). It was relevant that the department dismissed Graziosi to prevent insubordination. *Id.* We also credited the department's claim that there was "office buzz" concerning Graziosi's comments and held that the department did not need to wait for the buzz to become a "mini-insurrection." *Id.* at 741.

Here, Boyd wrote in his email that the grievances could be viewed as "in-fighting." In another email, Boyd said he did not want the first email to cause "hatred or animosity" among the officers, perhaps recognizing his first email might have done so. Other uncontroverted evidence in the record supports that Boyd's email interfered with the operations of the department. For example, Colonel Berry testified that the email created a "racial ruckus" and that members of the SWAT team expressed concerns that they did not feel safe operating with Boyd. Following the reasoning of *Graziosi*, the department was justified in moving Boyd from Troop H and removing him from the SWAT team to maintain close working relationships and discipline within those groups. The district court did not err in granting summary judgment to the department on Boyd's First Amendment free speech claim.

Boyd's First Amendment right to petition for redress of grievances claim fails for the same reasons as his free speech claim. Retaliation claims for the right to petition are analyzed the same way as free speech retaliation claims; Boyd must show that he meets the four-prong First Amendment retaliation test. *Gibson v. Kilpatrick*, 838 F.3d 476, 481 (5th Cir. 2016). As already discussed, Boyd has not shown that his interest in petitioning for redress of grievances outweighs the MDPS's interest in efficiency in the workplace.

Finally, Boyd's claim that his right to free association was violated fails. Boyd has not introduced any evidence that his undefined association had any impact on the decision to transfer him, to remove him from the SWAT team, or to terminate him. To sustain a free association claim, Boyd is required to show that he suffered an adverse employment decision, that his interest in association outweighs the MDPS's interest in promoting efficiency, and that his association motivated the MDPS's actions. *Breaux v. City of Garland*, 205 F.3d 150, 156, 157 n.12 (5th Cir. 2000). Because Boyd has not shown that his interest in free association outweighs the MDPS's interest in promoting efficiency and close working relationships, the department did not violate his right to freely associate.

Boyd's constitutional rights were not violated, which moots the issue of whether Commissioner Santa Cruz and Colonel Berry have qualified immunity. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

AFFIRMED.