# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 15, 2012

No. 12-20065
Summary Calendar

Lyle W. Cayce
Clerk

ARTHUR C. HYPOLITE; BERNARD GARRETT; WILLIE PRATT,

Plaintiffs - Appellants

v.

CITY OF HOUSTON, TEXAS, A Municipality,

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:04-CV-1468

Before STEWART, Chief Judge, and OWEN and GRAVES, Circuit Judges.

PER CURIAM:[*]

Plaintiffs-Appellants Arthur C. Hypolite ("Hypolite"), Bernard Garrett ("Garrett"), and Willie Pratt ("Pratt") (collectively "Appellants") appeal the district court's grant of summary judgment to Defendant-Appellee City of Houston, Texas ("City") on their discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and 42 U.S.C. § 1983. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-20065

## I. BACKGROUND

### A.    Facts

Appellants, who are black, were employees of the City at the time of the alleged discrimination and retaliation.  Between their hiring dates[1] and the events relevant to the instant case, all three filed at least one Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination ("charge") and/or one lawsuit against the City alleging race-based employment discrimination.

Relevant to the claims in this case is *Johnny Crawford et al. v. City of Houston*, No. H-02-618,[2] which Appellants and others filed against the City on February 19, 2002 for failing to promote them to the position of senior inspector.

### 1.  Hypolite

Hypolite, then a community service inspector with the City's Neighborhood Protection Division, had a history of tension with a white supervisor who had a Confederate flag tattoo.  After receiving notice that the supervisor was retiring, Hypolite sent an e-mail on April 23, 2002 from his work account to the City's Neighborhood Protection e-mail group that stated, "It appears that the confederate [sic] flag will no longer be with NPD as of April 30, 2002.  That will be another blessing for our Neighborhood Protection Division.  May the confederate [sic] flag go in peace."  The next day, Hypolite was suspended for seven days without pay for several Department and City policy violations, including improper use of e-mail and racial slurs.

---

[1] Garrett was hired in April 1990.  Hypolite was hired in October 1993.  Pratt was hired in March 1995.

[2] The case was dismissed without prejudice and refiled on December 3, 2004 as 4:04-cv-4555.

2

No. 12-20065

On September 22, 2002, Hypolite was given a written reprimand for failing to wear his City-issued uniform.[3]  On February 14, 2003, Hypolite filed a complaint with the EEOC alleging that the suspension and reprimand were retaliation for filing previous EEOC charges.  The EEOC subsequently issued a determination letter, opining as to the uniform charge only that "it is reasonable to believe that [Hypolite] was retaliated against for participating in a protected activity . . . ."  It made no findings on the suspension.  On May 19, 2004, Hypolite submitted his letter of resignation to the City.

### 2.  Garrett and Pratt

After receiving at least one verbal warning about his failure to wear his City-issued uniform, in September 2002 Garrett was suspended for fifteen days for failing to wear the uniform and for insubordination.  On November 20, 2002, Garrett filed a charge of discrimination with the EEOC alleging that the suspension was due to racial discrimination and retaliation.

On Feb. 22, 2003, the City's Aviation Department held a job fair at which Garrett and Pratt applied for several promotions.  The parties dispute how Garrett and Pratt's applications were received by the human resources ("HR") representatives at the fair.  Garrett and Pratt assert that they were "well received and told [their] qualifications for the position were excellent."  An HR representative later approached them while still at the fair and asked whether they were the people who had filed multiple complaints against the City.  Thereafter, they were told their applications had been lost and they could not be interviewed because the interviewers had left.

---

[3] We note Appellant's brief states that Hypolite received a 15-day suspension for failing to wear his uniform.  However, multiple documents in the summary judgment record, including Appellant's own submissions, state that Hypolite received a written reprimand, not a suspension.

No. 12-20065

The City, by contrast, asserts that the applications were reviewed by City HR personnel who determined that Garrett and Pratt did not have the requisite minimum construction experience for the positions. The parties agree that neither Garrett nor Pratt was offered an interview for any of the three positions to which they applied at the job fair.

On May 12, 2003, Garrett and Pratt filed charges with the EEOC alleging race discrimination and retaliation in connection with not being selected for the job fair positions.

On May 1, Garrett and Pratt interviewed for the positions of division manager and chief inspector. On March 1, 2004, they applied and interviewed for the position of assistant chief inspector. All of these positions would have promoted Garrett and Pratt within their current department. They were not selected for any of these positions.

On March 5, 2004, the EEOC issued determination letters to Garrett and Pratt that opined that "it was reasonable to believe that [they were] denied a job interview [at the job fair] in retaliation for participating in a protected activity."

B.    Procedural History

On April 13, 2004, Appellants filed the instant lawsuit in district court, alleging violations under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, 42 U.S.C. § 1983, and 42 U.S.C. § 1985. On May 12, 2005, the district court entered an order staying proceedings in the instant case until *Crawford*, No. H-02-618, was resolved. The City was granted summary judgment in *Crawford*, and this Court affirmed. *Crawford v. City of Houston*, 260 F. App'x 650 (5th Cir. 2007).

The City subsequently moved for summary judgment in the instant case, which the district court granted. This appeal followed.[4] In their brief,

---

[4] Appellants request that their case be assigned to a different judge on remand. Because we have affirmed the district court, we need not consider this request.

No. 12-20065

Appellants waived their right to appeal as to their 42 U.S.C. § 1985 claims.

## II.  ANALYSIS

### A.     Standard of Review

We review a district court's grant of summary judgment de novo, applying the same standards as the district court.  *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 877 (5th Cir. 2002) (citation omitted).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  We view all of the evidence and draw all inferences in the light most favorable to the nonmoving party, "and all reasonable doubts about the facts should be resolved in favor of the nonmoving party." *Terrebonne*, 310 F.3d at 877 (citation omitted). "Conclusory allegations and unsubstantiated assertions" do not provide a showing of genuine dispute.  *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

### B.     The Law Under Title VII

Under Title VII, it is unlawful for an employer "to fail or refuse to hire . . . or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race . . . ."  42 U.S.C. § 2000e-2(a)(1) (2006).  It also is an unlawful employment practice to discriminate against an individual who has "opposed" an unlawful employment practice or who has "made a charge . . . or participated in any manner in an investigation, proceeding, or hearing" related to unlawful employment practices.  42 U.S.C.  § 2000e-3(a) (2006).

### C.     Retaliation and Discrimination Claims

Where a employment retaliation or discrimination claim is based on circumstantial evidence, as it is here, the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) burden-shifting framework is used.  *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (per curiam).  Accordingly, to survive summary

5

No. 12-20065

judgment, the Appellants first must establish a prima facie case of retaliation or discrimination. *Septimus v. Univ. of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005) (citing *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 142 (2000)) (citations omitted). Once they have done so, the City bears the burden of setting forth its legitimate, non-discriminatory or non-retaliatory reason for its decision. *Id.* If the City provides a legitimate reason, the presumption of retaliation or discrimination disappears. *Id.* (citing *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001)). Then, Appellants can avoid summary judgment by demonstrating a genuine issue of material fact as to whether the City's seemingly legitimate reasons are not the true reasons, but are instead a pretext for discrimination or retaliation. *Id.* (citation omitted).

To establish a prima facie case of retaliation, Appellants must show that (1) they engaged in a protected activity; (2) they were subject to an adverse employment action; and (3) a causal link existed between the protected activity and the adverse action. *Septimus*, 399 F.3d at 610 (citation omitted).

To establish a prima facie case of discrimination, Appellants must show that they (1) are members of a protected class; (2) were qualified for their positions; (3) were subjected to an adverse employment action; and (4) were replaced by someone outside their protected class or were treated less favorably than other similarly situated employees outside of the protected class. *McCoy*, 492 F.3d at 556 (citation omitted). Employment discrimination claims brought under 42 U.S.C. § 1981 are analyzed under the same standard. *Turner v. Kan. City S. Ry. Co.*, 675 F.3d 887, 891 n.2 (5th Cir. 2012) (collecting citations).

**1. Failure to Promote Garrett and Pratt at Job Fair**

At the City's February 22, 2003 job fair, Garrett and Pratt each applied for the positions of assistant project manager, senior inspector, and inspector in the City's Aviation Department. The summary judgment record shows that the City's job postings for the position of assistant project manager required at a

No. 12-20065

minimum, *inter alia*, "**[t]wo years of experience in construction, construction inspection, design, geotechnical, environmental or in a closely related field**" (emphasis added); the position of senior inspector required at a minimum, *inter alia*, "**[f]our (4) years of journey level experience in the building trades, heavy construction or inspections** [although an] Associate of Arts degree in Building Code Administration may be substituted for two (2) years of experience" (emphasis added); and the position of inspector required, *inter alia*, "**[t]wo (2) years experience as a construction inspector** of civil or structural systems or related **construction experience**. Related construction or airport experience may be substituted for the education requirement on a year for year basis" (emphasis added).

To establish their discrimination claims, Garrett and Pratt contend that they were better qualified for the positions for which they applied than the applicants who were ultimately successful. On appeal, Garrett references his undergraduate and graduate degrees in civil and environmental engineering, and he points to his experience as a college work study office assistant for Civil, Environmental, and Construction Programs over twenty years ago. The City does not dispute the information contained in Garrett and Pratt's resumes, but the City explains that Garett and Pratt did not have the requisite minimum construction experience. The summary judgment record shows the type of construction experience that met the City's qualification requirements: the applicant selected for the assistant project manager position had experience overseeing construction crews and operating heavy equipment. The applicant selected for the senior inspector position had eight years of construction experience, as well as airport-related construction experience.[5]

---

[5] The summary judgment record presents no evidence on the individual who was hired for the inspector position.

7

No. 12-20065

Appellants also submit the EEOC's March 5, 2004 determination letters, which opine that Garrett and Pratt met the minimum standards for "at least one" of the positions for which they applied at the job fair and that they therefore were denied interviews in retaliation for their protected activities. The basis for the EEOC's determination is unclear.

EEOC findings are not determinative in later racial discrimination suits. *Price v Fed. Express Corp.*, 283 F.3d 715, 725 (5th Cir. 2002). Although Garrett's educational qualifications exceeded the minimum requirements, educational qualifications were only one part of the postings' minimum. A successful applicant for each position *also* needed construction experience of at least two years for which there was *no substitute*. Thus, in determining whether Garrett was qualified for the job fair positions, it did not matter that his education greatly exceeded the minimum education requirements because he *also* needed construction experience. Neither Garrett nor Pratt has provided any evidence in the summary judgment record that creates an issue of fact as to whether they had the requisite construction experience. Put another way, the summary judgment record contains no evidence that Garrett or Pratt had at least two years of construction experience, and so they were not qualified for the job fair positions to which they applied.

Because neither Garrett nor Pratt establish that they were qualified for the positions for which they applied at the February 2003 job fair, they have failed to meet their initial burden of proving a prima facie case of discrimination. Therefore, the district court properly granted summary judgment on this claim.

To establish their retaliation claims, Garrett and Pratt assert that an HR representative asked them whether they were the people who had filed multiple complaints against the City. The summary judgment record shows that the EEOC discovered that an HR supervisor at the job fair was aware that Garrett and Pratt had filed employment discrimination claims against the City.

Apparently based on this evidence, the EEOC's March 5, 2004 determination letters opine that Garrett and Pratt had been denied interviews in retaliation of their protected activities.

Failing to promote or hire someone is an adverse employment action. *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570 (5th Cir. 2003).

Because on summary judgment we view all evidence and draw all inferences in the light most favorable to the nonmoving party and because we also recognize that the burden of proving a causal link is less stringent than the ultimate issue determination, we find that Garrett and Pratt have established a prima facie case of retaliation. *See Long v. Eastfield College*, 88 F.3d 300, 305 n.4 (5th Cir. 1996).

The burden now shifts to the City to show that it had a legitimate, non-retaliatory reason for not hiring Garrett and Pratt for the job fair positions. *McCoy*, 492 F.3d at 556. The City has done so by providing evidence that Garrett and Pratt were not qualified for the positions for which they applied. Thus, the City has satisfied its burden, and Appellants can avoid summary judgment only by demonstrating a genuine issue of material fact as to whether the City's proffered reason is not the actual reason, but is instead a pretext for retaliation. *See Septimus*, 399 F.3d at 610 (citation omitted).

As discussed above, Garrett and Pratt have provided no evidence to support their assertions that they were qualified for the job fair positions to which they applied. Therefore, Garrett and Pratt fail to establish any material facts that would enable them to survive summary judgment. The district court properly granted summary judgment as to their retaliation claims.

**2. Failure to Promote Garrett and Pratt in 2003 and 2004**

Appellants assert that Garrett and Pratt did not receive "fair consideration" of their applications for the positions of division manager and chief inspector in May 2003, and for assistant chief inspector in March 2004. To

support this contention, Appellants rely on Garrett and Pratt's declarations in which they each declare that, "it was evident to me, based on the attitude of the interview panel members and the questions asked, that I was not to be accorded a fair opportunity to be promoted."

The problematic factor for these claims is the requirement that Appellants establish a causal link between the protected activity and the adverse action. *See Septimus*, 399 F.3d at 610 (citation omitted). Garrett and Pratt do not satisfy this prong because their declarations regarding their impression of their interviews contain merely conclusory assertions. Appellants therefore do not meet the burden necessary to establish a prima facie retaliation claim, and the district court properly granted summary judgment.

As to their discrimination claims, Garrett and Pratt must establish, *inter alia*, that they were replaced by someone outside the protected class or that they were treated less favorably than other similarly situated employees outside the protected group. *See McCoy*, 492 F.3d at 556 (citation omitted).

Garrett and Pratt establish a prima facie case as to only one job, that of assistant chief inspector, because they do not establish, with respect to the other two jobs, that others outside the protected class were treated more favorably. Only for assistant chief inspector do Appellants assert the successful job applicant's race,[6] and it is not the Court's duty to "sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).

Thus, Garrett and Pratt establish a prima facie case of discrimination when they were not hired for the position of assistant chief inspector because (1) they are members of a protected class because they are black; (2) the City does

---

[6] The assertion is made in Appellant's Second Amended Complaint to the district court. No assertions as to race are made to any job applicants in the Appellant's briefs on appeal or in the docket entry to which the Appellants direct this Court's attention.

not dispute that they were qualified for the position of assistant chief inspector; (3) they were not promoted to assistant chief inspector; and (4) a white man was selected for the promotion.

The City asserts that Garrett and Pratt were not selected for the position because they were not the top candidates based on "interview responses, presentations and articulation of experiences and problem solving abilities." Thus, the City has met its burden of articulating a legitimate, non-discriminatory reason for its failure to promote Garrett and Pratt to assistant chief inspector.

The burden now shifts to Garrett and Pratt to prove that the City's reason for failing to promote them was a pretext for racial discrimination. *See Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 412 (5th Cir. 2007). To do so, they can show that (1) the City's explanation was false or unworthy of credence or (2) they were clearly better qualified than the applicant chosen for the promotion. *Id.* (internal quotation marks and citation omitted).

To show the City's explanation was false or unworthy of credence, Garrett and Pratt appear to rely on their conclusory statements that they did not receive a "fair opportunity to be promoted." They also assert that the City's subjective hiring criteria is not permissible in rebutting allegations of discrimination. However, Garrett and Pratt misunderstand our precedent. A subjective decision making process does not raise inferences of discriminatory conduct. *See Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 990 (1988). The case that Garrett and Pratt rely on states that only objective criteria may be used in determining whether a candidate is qualified for a position. *See Johnson v. Louisiana*, 351 F.3d 616, 622 (5th Cir. 2003). But that is inapposite to the situation here because the City does not assert that Garrett and Pratt were not qualified for the position of assistant chief inspector. Rather, the City asserts that Garrett and Pratt were qualified, but were not the top candidates for the position.

Garrett and Pratt have presented no evidence to contradict that assertion, and thus they have not shown that the City's explanation was false or unworthy of credence.

We next consider whether Garrett and Pratt show that they were clearly better qualified than the successful applicant. "Showing that two candidates are similarly qualified does not establish pretext." *Price v. Fed. Express Corp.*, 283 F.3d 715, 723 (5th Cir. 2002). "[D]isparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Deines v. Dep't of Protective & Regulatory Servs.*, 164 F.3d 277, 280-81 (5th Cir. 1999). This Court has held that "better education, work experience, and longer tenure with the company do not establish that he is clearly better qualified." *Price*, 283 F.3d at 723.

According to the summary judgment record, the successful applicant, Garrett and Pratt all met the minimum requirements for the position. The successful applicant had fewer education degrees than either Garrett or Pratt. He also had four years of experience as a community service inspector, three years of experience as a senior inspector, and thirteen years supervisory experience as municipal director of public works for another city. Garrett and Pratt only had experience as community service inspectors. Garrett states that he had over six years of supervisory experience, but does not explain for what organization he was a supervisor. Pratt states that he had five years of supervisory capacity over a Coast Guard patrol boat crew.

Garrett and Pratt fail to establish that they were clearly better qualified. Although they have education that far exceeds the minimum requirements, in light of the successful applicant's supervisory experience, the disparities in qualification are not so great that no reasonable person could have chosen the candidate selected. Thus, Garrett and Pratt have failed to establish pretext, and

the district court properly granted summary judgment as to their discrimination claims.

### 3. Hypolite's April 2002 Suspension

Hypolite challenges his seven-day suspension without pay in April 2002 as unlawful retaliation for protected conduct. A temporary suspension without pay is an adverse employment action. *See LeMaire v. La. Dept of Transp. & Dev.*, 480 F.3d 383, 390 (5th Cir. 2007) (holding that a two-day suspension without pay was an adverse employment action because it "might have dissuaded a reasonable employee from making a charge of discrimination").

Hypolite's difficulty in establishing a prima facie case arises from the causal link prong. Temporal proximity is one indicia of a prima facie causal link, and where it is the sole evidence, the temporal proximity must be "very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). This Court has stated that "a time lapse of up to four months has been found sufficient to satisfy the causal connection for summary judgment purposes." *Evans*, 246 F.3d at 354 (internal quotations and citations omitted).

Hypolite's April 2002 suspension occurred about two months after he filed his lawsuit against the City, within the time frame necessary to establish a causal link. In combination with the other factors already discussed, Hypolite thus has made a prima facie showing of retaliation with respect to his April 2002 suspension.

The burden now shifts to the City to show that it had a legitimate, non-retaliatory reason for the suspension. *McCoy*, 492 F.3d at 557. The City has done so by asserting that Hypolite was suspended for violating several department and City policies, including improper use of e-mail and racial slurs. Thus, the City has satisfied its burden, and Hypolite can avoid summary judgment only by demonstrating a genuine issue of material fact as to whether

the City's seemingly legitimate reasons are not true reasons but instead are a pretext for retaliation. *See Septimus*, 399 F.3d at 610 (citation omitted).

Hypolite has provided no evidence that the City's proffered reason was merely a pretext for retaliation. He asserts that a Muslim employee who sent an e-mail about the September 11, 2001 terrorist attacks was not disciplined. However, based on the summary judgment record, Hypolite's e-mail is distinguishable from the e-mail sent by the Muslim employee. Here, Hypolite had a history of tension with his supervisor over the supervisor's Confederate flag tattoo. As a result of Hypolite's actions and comments toward the supervisor, Hypolite had previously been instructed not to "intimidate or incite" the supervisor. Hypolite's e-mail blatantly disregarded this instruction. Hypolite has presented no evidence that the Muslim employee's e-mail was sent under similar circumstances. Neither has Hypolite presented any other evidence that the City's proffered reason was a pretext for retaliation. Therefore, Hypolite has not met his burden such that this claim should survive summary judgment. The district court properly granted summary judgment as to Hypolite's retaliation claims.

### 4. Hypolite and Pratt's September 2002 Discipline

Hypolite challenges his September 2002 written reprimand as unlawful retaliation for protected conduct.[7] Garrett challenges his September 2002 suspension without pay as unlawful retaliation and race discrimination.

As noted above, a temporary suspension without pay is an adverse employment action. *See LeMaire*, 480 F.3d at 390. A reprimand also is an

---

[7] It is unclear from Appellant's brief and the summary judgment record whether Hypolite has raised a race discrimination claim. Because Appellant's brief does not challenge the district court's failure to issue a ruling as to any race discrimination claim Hypolite may have raised, the issue is waived. *See* Fed. R. App. P. 28(A)(9).

14

adverse employment action. *Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539, 555 (5th Cir. 1997) (citation omitted).

As also noted above, temporal proximity is one indicia of a prima facie causal link for retaliation and, where it is the sole evidence, the temporal proximity must be "very close." *Clark Cnty*, 532 U.S. at 273 (citation omitted). A causal connection based on temporal proximity can be shown when the adverse employment action occurs up to four months after the protected conduct. *See Evans*, 246 F.3d at 354 (citation omitted).

The September 2002 discipline occurred about nine months after Hypolite and Garrett filed their discrimination lawsuit against the City. Because this time period is significantly longer than four months, it is not enough to establish a causal link for retaliation. The only other evidence they present in support of their claims is the EEOC's September 29, 2003 determination letter opining that "it is reasonable to believe that [Hypolite] was retaliated against for participating in a protected activity" because other employees were not similarly reprimanded. Appellants assert without specificity that white employees who did not wear their uniforms were not reprimanded. They present no evidence of this assertion.[8]

EEOC "findings of racial discrimination are not dispositive in later racial discrimination suits." *Price*, 283 F.3d at 725. As discussed above, Hypolite and Garrett present no evidence to support their assertions that white employees were not disciplined for the same conduct. Thus, they are unable to establish the causal link prong and have not met their burden for establishing a prima facie case of retaliation.

---

[8] While Appellants assert that they had photographic proof of white employees not wearing their city-issued uniforms, these photographs are not in the summary judgment record.

No. 12-20065

Turning to Garrett's discrimination claim, as with his retaliation claim, he presents no evidence that white employees were not disciplined for the same behavior. Thus, he does not meet the burden necessary to establish a prima facie case of discrimination.

Because Hypolite and Garrett have not established a prima facie case of retaliation or discrimination for their September 2002 discipline, the district court properly granted summary judgment on these claims.

## D.    Constructive Discharge

To succeed on his constructive discharge claim, Hypolite must show "working conditions . . . so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Nassar v. Univ. of Tex. Sw. Med. Ctr.*, 674 F.3d 448, 453 (5th Cir. 2012) (quotations omitted). There must be "a greater severity of pervasiveness or harassment than the minimum required to prove a hostile work environment." *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 444 (5th Cir. 2011) (quotations omitted). Therefore, this Court considers aggravating factors including: (1) demotion; (2) reduction in salary; (3) reduction in job responsibility; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status. *Nassar*, 674 F.3d at 453 (citation omitted).

As evidence of his claims, Hypolite presents his declaration and his resignation letter. In the former, he states that the City "increased its adverse treatment to the extent that my health was affected and I was subjected to severe emotional distress on a daily basis." In his resignation letter, Hypolite complains of hostile and unfair treatment. In neither the resignation letter nor the declaration does Hypolite discuss specific instances of the hostile or unfair treatment, apart from a passing reference to an "unfairly low" evaluation.

16

The only aggravating factor these statements might fall under is that of "badgering harassment or humiliation." However, mere conclusory statements are insufficient to overcome summary judgment. *See, e.g. Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379-80 n.22 (5th Cir. 2010) (collecting citations). Hypolite's submissions contain no details about the alleged harassment and therefore are insufficient to raise a genuine dispute as to any material fact related to this claim. The district court properly granted summary judgment on Hypolite's constructive discharge claim.

E.    **First Amendment Discrimination under § 1983**

Garrett and Pratt assert that their non-promotions were retaliatory in violation of their First Amendment rights to free speech. "To establish a § 1983 claim for employment retaliation related to speech, a plaintiff-employee must show: (1) he suffered an adverse employment action; (2) he spoke as a citizen on a matter of public concern; (3) his interest in speech outweighs the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action." *Nixon v. City of Hous.*, 511 F.3d 494, 497 (5th Cir. 2007) (citation and quotations omitted).

As our above analysis establishes, Garrett and Pratt are unable to show that their speech precipitated any of the adverse employment actions they experienced. Accordingly, they show no First Amendment violations and the district court properly granted summary judgment on this claim.

## III.  CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment.